RAMSDEN, MARFICE, EALY & HARRIS, LLP
700 Northwest Boulevard
P.O. Box 1336
Coeur d'Alene, ID 83816-1336
Telephone: (208) 664-5818
Facsimile: (208) 664-5884
Michael E. Ramsden, ISB #2368

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, <br><br> Plaintiff, <br><br> vs. <br><br> ADVANCED POWER GENERATOR SYSTEMS, INC.; ADVANCED POWER SYSTEMS; GENE STONE, and DOES 1 through 10. <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR:** <br><br> 1. **CONSPIRACY TO COMMIT FRAUD;** <br><br> 2. **AIDING AND ABETTING FRAUD; AND** <br><br> 3. **CIVIL RICO VIOLATIONS OF 18 U.S.C. § 1962(d)** <br><br> **AND JURY DEMAND** |

Plaintiff American Casualty Company of Reading, Pennsylvania ("American Casualty") alleges as follows:

**The Parties:**

1.    American Casualty is, and at all relevant times was, a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Chicago, Illinois.

COMPLAINT AND JURY DEMAND - 1

2.    The defendant Advanced Power Generator Systems, Inc. ("APGS") is, and at all relevant times was, a corporation organized and existing under the laws of the State of Idaho, with its principal place of business in Coeur d'Alene, Idaho.

3.    The defendant Advanced Power Systems ("APS") is an assumed business name for APGS.

4.    The defendant GENE STONE is, and at all relevant times was, President of APGS.

5.    The defendant GENE STONE is a resident of Idaho and domiciled in the state of Idaho.

**Jurisdiction and Venue:**

6.    The jurisdiction of this Court over the subject matter is predicated on 28 U.S.C. §1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2).

**Insurance Claims by Yo-Ty, and Defendants' Involvement:**

8.    During all relevant times herein, Yo-Ty Industries, LLC ("Yo-Ty"), a limited liability company conducting business in Los Angeles, California, operated a business involved in designing and engineering prototype generators and auxiliary power units used in various industries with a business location at 2646 Pacific Park Drive, Whittier, California (the "Property").

9.    American Casualty issued an insurance policy, policy no. B2090964308, to Yo-Ty which was in effect from November 10, 2011 to November 10, 2013 (the "Policy"). The Policy provided coverage to Yo-Ty for its business located at the Property as well as its business-related liabilities, as set forth in the Policy.

COMPLAINT AND JURY DEMAND - 2

10.  On September 2, 2013, a fire occurred at the Property and allegedly caused a total loss to Yo-Ty's business personal property (the "Fire Loss").

11.  On or about September 8, 2013, Yo-Ty allegedly suffered a theft loss. Tyler Stone, an owner of Yo-Ty and son of GENE STONE, reported that someone had broken into the Property and had stolen certain metals.

12.  On or about September 9, 2013, Yo-Ty allegedly suffered a vandalism loss. Tyler Stone reported that the landlord bulldozed the Property without his permission destroying salvageable materials in the Property.

13.  On or about September 16, 2013, Yo-Ty allegedly suffered another theft loss. Tyler Stone reported that thieves once again broke into the Property and stole additional property which he claimed was salvageable.

14.  Upon receipt of notice of each of the foregoing losses, American Casualty opened a claim and immediately began investigating them.

15.  Throughout the claim investigations, American Casualty paid Yo-Ty a total of total of $517,659.09: $102,432.88 for business personal property; $25,000.00 for debris removal; $250,000.00 for newly acquired property; $6,193.21 for EDP; $30,000.00 for personal effects and trailers; $70,000.00 for rent for the temporary location; and $34,033.00 for extra expenses. These payments all pertained to the Fire Loss.

16.  In March 2014, American Casualty's accounting consultant sent Tyler Stone an email requesting information regarding Yo-Ty's vendors and purchase orders. In response, Tyler Stone sent American Casualty a list with information regarding Yo-Ty's outside vendors and job shops list. However, American Casualty's investigation concerning Yo-Ty's

COMPLAINT AND JURY DEMAND - 3

vendors revealed that these vendors either did not exist or could not confirm that they did any business with Yo-Ty.

17.   On April 15, 2014, Tyler Stone advised American Casualty that APS had cancelled all existing contracts with Yo-Ty, and that he had cancelled an equipment lease with Fleet Comfort Systems, LLC due to losing the contract with APS. In support of the foregoing, Tyler Stone submitted a letter from Mel Ingram, the manager for APS, addressed to Tyler Stone stating that APS was cancelling its contracts with Yo-Ty. Tyler Stone blamed the loss of this contract, as well as "$900,000.00 worth of active P.O.'S", on American Casualty's investigation.

18.   GENE STONE later confirmed that he had withdrawn all contracts with Yo-Ty due to nonperformance. GENE STONE also confirmed that Mr. Ingram was the project manager for APS. However, GENE STONE refused to provide American Casualty with Mr. Ingram's contact information. To date, American Casualty has been unable to locate or contact Mr. Ingram to confirm the existence or withdrawal of the contracts.

19.   GENE STONE further confirmed that he had shipped materials to Yo-Ty to build prototypes following the Fire Loss. However, GENE STONE has declined to provide any additional information regarding the location of any materials.

20.   During American Casualty's investigation, Tyler Stone repeatedly failed to comply and/or appear at his examination under oath. American Casualty denied Yo-Ty's claim, and caused to be delivered to Yo-Ty a Notice of Rescission, whereby American Casualty advised Yo-Ty that all premiums paid by Yo-Ty and received by American Casualty are to be considered returned and offset by any sums previously paid by American

COMPLAINT AND JURY DEMAND - 4

Casualty to the Insured under the Policy. American Casualty had paid Yo-Ty a total of $654,931.87 for the Fire Loss.

21.   Yo-Ty refused to restore to American Casualty, in whole or in part, the money paid by American Casualty, less the premiums Yo-Ty paid, totaling $653,453.87.

22.   American Casualty initiated an action against Yo-Ty, Tyler Stone, Mel Ingram, and other entities who acted as vendors or conducted business with Yo-Ty in California Superior Court, County of Los Angeles, styled *American Casualty Co. v. Yo-Ty Industries, et al.*, Case No. VC064395, for rescission of the Policy, declaratory relief, fraud, conspiracy to commit fraud, aiding and abetting fraud, and civil RICO violations.

23.   On information and belief, American Casualty alleges that Defendants APS, APGS, and GENE STONE, along with Yo-Ty and other companies doing business with Yo-Ty, have acted in concert in fabricating business transactions by way of fraudulent invoices and/or written communications for purposes of supporting other claims to American Casualty and its affiliated companies or other insurers for inflated or illegitimate insurance benefits in which some or all of defendants received monetary payments.  Defendants and each of them acted with knowledge that the use of the mails would follow in the ordinary course of business or defendants and each of them knew or should have reasonably foreseen that any insurance payments would be made through the United States mail.

## FIRST CAUSE OF ACTION

### (CONSPIRACY TO COMMIT FRAUD)

#### (Against all Defendants)

24.   American Casualty re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

COMPLAINT AND JURY DEMAND - 5

25.    American Casualty alleges, on information and belief, that Yo-Ty and Tyler Stone, with the knowledge, consent and ratification of Defendants, made a number of material misrepresentations pertaining to the claims including, but not limited to:

a.    Sending correspondence to American Casualty that was purportedly sent to Yo-Ty from APS, which purported to cancel contracts with Yo-Ty, and purported to remove Yo-Ty from vendor list. The signature on the correspondence could never be confirmed.

b.    Tyler Stone subsequently claim that he cancelled leases due to the lost APS contract.

c.    Gene Stone verified that APS had withdrawn all contracts with Yo-Ty due to nonperformance.

d.    Tyler Stone attempted to blame the loss of the contract on American Casualty by claiming that American Casualty's investigators caused him to lose the contract and "$900,000.00 worth of active P.O.'S" during the investigation process.

26.    Tyler Stone knew at the time of his representations and submissions on behalf of Yo-Ty that they were false and/or fabricated, and made the misrepresentations with the intent and knowledge that American Casualty would rely upon such misrepresentations in making payment on the claims.

27.    In reliance upon and based upon the material misrepresentations and omissions by Yo-Ty, through its authorized representative, owner, officer, manager and alter ego, Tyler Stone, American Casualty issued payments on Yo-Ty's claims totaling $654,931.87.

COMPLAINT AND JURY DEMAND - 6

28.   American Casualty is informed, believes and alleges thereon that Defendants APS, APGS, and GENE STONE (collectively the "Conspirators") agreed and knowingly and willfully entered into an agreement and conspiracy among themselves to aid Yo-Ty and Tyler Stone in submitting fraudulent claims to American Casualty. Specifically, American Casualty is informed, believes and alleges thereon that the Conspirators made material misrepresentations to and/or concealed material information from American Casualty during American Casualty's investigation of Yo-Ty's claims.

29.   American Casualty is informed, believes and alleges thereon that each of the Conspirators entered into the conspiracy with knowledge of the fraud and with the intent to aid in that fraud.

30.   American Casualty is informed, believes and alleges thereon that the Conspirators did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above.

31.   As a direct and proximate result of the Conspirators' conduct, American Casualty detrimentally relied upon the material misrepresentations and concealments and has suffered damages, the exact amount to be proved at trial.

## SECOND CAUSE OF ACTION

## (AIDING AND ABETTING FRAUD)

### (Against all Defendants)

32.   American Casualty realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as though fully set forth herein.

33.   American Casualty is informed, believes and alleges thereon that the Conspirators aided and abetted Yo-Ty and Tyler Stone by knowingly, intentionally or

COMPLAINT AND JURY DEMAND - 7

recklessly facilitating Yo-Ty's fraudulent scheme by misrepresenting, concealing, and/or failing to disclose material information to American Casualty during American Casualty's investigation of Yo-Ty's claims.

34.   Each of the Conspirators knew that Tyler Stone's conduct constituted fraud and they still gave Tyler Stone substantial assistance in furtherance of the fraud.

35.   Each of the Conspirators' conduct was a substantial factor in causing harm to American Casualty.

36.   As a direct and proximate result of Conspirators' conduct, American Casualty has suffered damages, the exact amount to be proved at trial.

### THIRD CAUSE OF ACTION

### (CIVIL RICO VIOLATIONS OF 18 U.S.C. § 1962(d))

### (Against all Defendants)

37.   American Casualty realleges and incorporates by reference the allegations contained in paragraphs 1 through 36 above as though fully set forth herein.

38.   Yo-Ty and Defendants are an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in or affecting interstate commerce. American Casualty alleges, on information and belief, that Tyler Stone of Yo-Ty made a number of material misrepresentations and/or concealed material information pertaining to the claims submitted by Yo-Ty to American Casualty.

39.   American Casualty alleges, on information and belief, that Tyler Stone's material misrepresentations and/or concealments in order to obtain payments from American Casualty represented a scheme to defraud American Casualty.

40.   Specifically, American Casualty alleges, on information and belief, that Tyler Stone's material misrepresentations and/or concealments in order to obtain payments from American Casualty represented a scheme to defraud American Casualty, and that he acted with knowledge that he would use the mails in connection with each of the fraudulent claims, or that American Casualty would use the mails to send payments to the recipients.

41.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

42.   Tyler Stone's multiple fraudulent misrepresentations as detailed above constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5). Tyler Stone has conducted, directed, managed or participated in, either directly or indirectly, the conduct of the affairs and business of the enterprise through the described pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

43.   Defendants, and each of them, have conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of Yo-Ty through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

44.   As a direct and proximate result of these violations of 18 U.S.C. § 1962(d), American Casualty has suffered actual damages in an amount to be proven at trial.

45.   American Casualty is therefore entitled to treble damages, costs of suit, and reasonable attorneys' fees under 18 U.S.C § 1964(c).

**WHEREFORE**, American Casualty prays as follows:

1.   For special and general damages in an amount according to proof;

COMPLAINT AND JURY DEMAND - 9

2.      For an amendment of the Complaint, if necessary, to include prayer for punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar conduct;

3.      For an award of treble damages;

4.      For attorneys' fees and costs of suit incurred in this action; and

5.      For such other and further relief that the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL

DATED this 20th day of December, 2016.

RAMSDEN, MARFICE, EALY & HARRIS, LLP


By:  /s/ Michael E. Ramsden
     Michael E. Ramsden, Of the Firm
     Attorneys for Plaintiff
     AMERICAN CASUALTY COMPANY OF
     READING, PENNSYLVANIA

COMPLAINT AND JURY DEMAND - 10